*205 Opinion
MOSK, Acting P. J.
INTRODUCTION
Defendant and appellant N.D. (mother) was a minor when the Los Angeles County Department of Children and Family Services (the Department) filed a petition under section 300 of the Welfare and Institutions Code[1] on behalf of her 17-month-old son J.F. The juvenile court found jurisdiction because of mother’s mental condition, declared J.F. to be a dependent, and ordered him to remain in the home of mother. The juvenile court has continued to maintain jurisdiction over J.F. Mother appeals from an order entered at the last contested section 364 hearing at which the juvenile court maintained jurisdiction despite the recommendation of the Department to terminate jurisdiction. We interpret section 364, subdivision (c) to permit the juvenile court to retain jurisdiction if there is sufficient evidence to support such retention, notwithstanding the recommendation of the Department to terminate jurisdiction. We affirm the order.
BACKGROUND
In early March 2011, mother, a 16-year-old dependent of the court, reportedly wanted to hurt herself and others. There was information she had been subjected to sexual abuse as a child by her stepfather and, as a result, had homicidal ideations. She acknowledged a history of using marijuana. She was then hospitalized. J.F.’s paternal grandmother[2] was caring for him during mother’s hospitalization. J.F. was healthy and showed no signs of abuse or neglect.
Upon release from the hospital, mother lived with paternal grandmother and J.F., and, according to a children’s social worker, J.F. was doing well in mother’s care. A Department report reflected that mother met her therapy and medication requirements. According to a psychiatrist with the State Department of Mental Health, mother was involved in J.F.’s life, had a positive outlook, and wanted to return to school to complete her education. J.F.’s father did not live with mother and J.F. In March and April of 2011, father’s whereabouts were unknown. He was incarcerated in May of 2011. Later, it was reported he had no place of residence. He was accorded monitored visits with J.F. On April 22, 2011, the Department filed a so-called “not detained” *206 petition on behalf of 17-month-old JE. pursuant to section 300, subdivisions (b) and (g). Father was found to be J.F.’s presumed father. Over J.F.’s counsel’s objection, the juvenile court did not detain J.F. from mother’s custody. Mother’s contact with J.F. was, however, monitored. J.F. was not to be left alone with mother and was to sleep at the residence of [paternal] great grandmother.
On May 25, 2011, at a jurisdictional hearing, the juvenile court sustained an amended count b-1, finding true that mother had mental and emotional problems, including depression, auditory hallucinations, and suicidal and homicidal ideations in the past. She was hospitalized in March 2011 for psychiatric reasons. Allegations pertaining to father were not acted upon. Counsel for J.F. filed a section 388 petition on May 25, 2011, seeking an order detaining J.F. from mother’s care. In response to the section 388 petition, the Department reported it was in J.F.’s best interest to remain in mother’s custody. Mother and J.F. were moved to the foster home of L.M.
L.M. reported positively on mother’s treatment of J.F., and mother continued to comply with her therapy and medication requirements. On one occasion, it was noted that mother was not taking all her pills, believing she did not need them, but was then advised to keep taking them.
On July 6, 2011, the juvenile court dismissed counts b-1 and g-1 as to father. The juvenile court made dispositional findings declaring J.F. a dependent and ordering that his status remain “home-of-parent mother.” Mother was ordered to participate in teen parenting services, participate in counseling to address her history of being sexually abused, and to take three random drug tests. The juvenile court denied JE.’s section 388 petition, finding the requested change of order concerning the role of paternal great grandmother not to be in J.F.’s best interests.
On February 1, 2012, the juvenile court conducted a hearing pursuant to section 364 and found that the conditions justifying the initial assumption of jurisdiction were likely to exist if supervision was withdrawn. On August 1, 2012, at a section 364 hearing, J.F.’s counsel urged the juvenile court to maintain supervision for another six months, notwithstanding the Department recommendation to terminate jurisdiction. The juvenile court continued jurisdiction.
During 2012, mother continued to participate in counseling and parenting classes and she tested negative for drugs. A therapist wrote that mother “has made minimal progress in treatment due to difficulty remembering information about therapeutic interventions and parenting skills. I have difficulty *207 recognizing if [mother] has difficulty comprehending interventions due to cognitive delay, or if her difficulties are related to her extensive trauma history.”
Also during 2012, mother and J.F. were placed in Mary’s Shelter, apparently because of paternal grandmother’s lack of cooperation with the Department. In April 2012, mother turned 18 years old “but remain [ed] under the supervision of [the Department] and Children’s court and in out of home care under her mother’s Dependency case.” Mother was issued a “Learning Experience” referral from her group home for leaving J.F. unattended in a bathtub while she retrieved a bath-related item. Under supervision, no such further incidents occurred.
In August 2012, the Department recommended that the juvenile court terminate jurisdiction as no safety concerns were identified and mother “ha[d] made improvement with all her parenting goals.” Mother was to undergo surgery for a cleft palate, continue to work towards a high school diploma, and continue to participate in individual counseling. Mother no longer experienced thoughts of trauma, continued to meet with her parenting instructor, and improved on meeting parenting goals (although they were referred to as “a work in progress”). Her therapy sessions were going well.
In December 2012, the juvenile court terminated paternal grandmother’s reunification services and ordered mother into a planned permanent living arrangement. The January 30, 2013, Department report reflected that mother remained a dependent of the court. Mother continued to do well medically, educationally, and in supervising J.F. The Department recommended that jurisdiction be terminated as there were no immediate safety concerns.
A March 13, 2013, Department report reflected that mother read to J.F. and praised him, but she talked to others when she needed to attend to J.F., and she cursed in front of J.F. There were other issues reported as to mother’s parenting.
In February 2013, a peer reported that in November 2012, she witnessed mother kick J.F. and, at some time, hit J.F. in the head with a remote control device. A social worker found the allegations inconclusive. Mother vigorously denied the allegations. At a March 2013 section 364 hearing set by J.F.’s counsel after the Department’s recommendation to terminate jurisdiction, counsel for J.F. again requested the juvenile court not terminate jurisdiction, and the juvenile court retained jurisdiction.
On August 3, 2013, the Department again recommended a termination of juvenile court jurisdiction with mother having sole custody of J.F. On *208 September 18, 2013, the Department reported that mother was still in Mary’s Shelter; she had undergone outpatient surgery; she would graduate from high school in June of 2014; she continued to participate in parenting classes; her communication with J.F. had improved slightly, although she sometimes spoke harshly to J.F.; she “continued to struggle with her supervision of J.F.”; she had difficulty in providing meals for J.F.; and she lacked consistency in dealing with J.F.’s sleep, nap times, and toilet training. A counselor reported that mother had been consistent with her treatment; had made substantial progress; and would benefit from continued treatment. It was also reported that there was no significant reason to prescribe any medications for mother at that time. The Department counselor concluded “that the risk level in regard to this case is Moderate. . . . [Mother] will remain under [the Department] and Dependency Court supervision as a non minor dependency via AB 12 [(which provides for those eligible to remain in foster care after turning 18 years old)]. (§ 303, subds. (a), (b).)”
On November 12, 2013, at the section 364 hearing set by J.F.’s counsel after the Department recommended a termination of jurisdiction, J.F.’s counsel again requested the juvenile court not terminate jurisdiction. The juvenile court continued jurisdiction. The juvenile court found that while mother’s past mental health issues were no longer a continued risk to J.F., she continued to “struggle a bit” with providing J.F. everything he needed. The juvenile court explained: “The reality is this: As I sit here, day in and day out, more and more and more cases that seem to return to these systems are from young people who have babies that were once in the system themselves. And what happens when that comes in is that those children are removed. [|] And the court is seriously concerned that, without the protections in place, that that could happen to [mother]. And I would not want to see [J.F.] removed from her. And I do believe that court jurisdiction is necessary to keep those services in place, to keep [J.F.] with [mother], and to keep him appropriately supervised and protected. ... I believe that terminating jurisdiction at this time is, No. 1, risky for [J.F.]; and, No. 2, I think it’s risky for [mother] because I think, without the proper supervision and services in place, [mother] could lose [J.F.] and that is risky for her as well.” The juvenile court concluded, “So in trying to balance everyone’s needs and what will keep [J.F.] safe and [mother] with her son, which is what I know she wants, the Court is maintaining jurisdiction.”
Mother filed a timely notice of appeal on November 12, 2013. J.F.’s attorney filed a response. The Department filed a letter saying that it had *209 recommended jurisdiction be terminated and was “aligned with appellant below.” It said it would not file a brief and that the appropriate respondent is J.F.[3]
DISCUSSION
A. Standard of Review
Orders made pursuant to section 364 are reviewed for substantial evidence. (In re N. S. (2002) 97 Cal.App.4th 167, 172 [118 Cal.Rptr.2d 259]; In re Baby Boy L. (1994) 24 Cal.App.4th 596, 610 [29 Cal.Rptr.2d 654].) Under the substantial evidence standard of review, the appellate court does not reweigh the evidence, evaluate the credibility of witnesses, or draw inferences contrary to the findings of the trial court. (In re Michael G. (2012) 203 Cal.App.4th 580, 589 [137 Cal.Rptr.3d 476].) The appellate court “accept[s] the evidence most favorable to the order as true and discard[s] the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact.” (In re Casey D. (1999) 70 Cal.App.4th 38, 52-53 [82 Cal.Rptr.2d 426].) For evidence to be sufficient to support a trial court’s finding, it must be reasonable, credible, and of solid value. (In re B.T. (2011) 193 Cal.App.4th 685, 691.)
B. Applicable Law
Under section 364, subdivision (c), the juvenile court shall determine whether continued supervision is necessary when a child not removed from the parent is receiving family maintenance services. The second sentence of section 364, subdivision (c) provides as follows: “The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn.” Under section 364, the juvenile court must determine whether “the conditions still exist which would justify initial assumption of jurisdiction under Section 300, *210 or that those conditions are likely to exist if supervision is withdrawn.” The language of section 364 does not literally require that the precise conditions for assuming jurisdiction under section 300 in the first place still exist— rather that conditions exist that “would justify initial assumption of jurisdiction.” (Italics added.) (But see In re Janee W. (2006) 140 Cal.App.4th 1444, 1451 [45 Cal.Rptr.3d 445].)
Mother contends that because the Department recommended termination of jurisdiction, it did not establish “by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn” and therefore the juvenile court “sh[ould] terminate its jurisdiction.” (§ 364, subd. (c).) Mother argues it is the Department that must establish the facts for continued jurisdiction and if it fails to do so, the juvenile court is required to terminate jurisdiction.[4] Mother also points to the Department’s recommendations that jurisdiction be terminated and argues that “the juvenile court was compelled to terminate jurisdiction.”
We read section 364, subdivision (c) to mean that the juvenile court may retain jurisdiction notwithstanding the recommendation of, or facts solely submitted by, the Department if there is a preponderance of evidence that the conditions are such to justify that retention. The first sentence of section 364, subdivision (c) provides, “After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary.” This sentence would be rendered nugatory if the Department could, in effect, determine by itself that jurisdiction must be terminated. As reflected in the first sentence, after considering all the evidence, it is the juvenile court that is to determine whether continued supervision is necessary.
The Supreme Court in People v. Shabazz (2006) 38 Cal.4th 55, 67 through 68 [40 Cal.Rptr.3d 750, 130 P.3d 519], set forth the rules of statutory interpretation that are relevant here: “To resolve this ambiguity, we rely upon well-settled rules. ‘The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. . . . An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme *211 [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].’ [Citation]; see also Robert L. [v. Superior Court (2003)] 30 Cal.4th 894, 903 [135 Cal.Rptr.2d 30, 69 P.3d 951] [‘ “Statutory language should not be interpreted in isolation, but must be construed in the context of the entire statute of which it is a part, in order to achieve harmony among the parts” ’].)”
To give veto power to the Department would unreasonably divest the juvenile court of the power to determine what is best for the child. The intention of the Legislature is best derived from the first sentence of section 364, subdivision (c) and the other dependency provisions that give the juvenile court the responsibility for determining matters related to the interests of the child. (See, e.g., §§ 300, 362, subds. (a) & (c), 366, 366.21, 366.22, subd. (a), 366.26, 366.3.) “Although the meaning of a statutory phrase may be plain and certain if the phrase is considered in isolation, blind adherence to the text of a statutory phrase is improper if its literal interpretation is inconsistent with other provisions of the same statute, defeats the apparent legislative intent and is otherwise in conflict with accepted interpretive canons.” (Hatch v. Superior Court (2000) 80 Cal.App.4th 170, 226 [94 Cal.Rptr.2d 453].) Moreover, interpretation of statutory language leading to absurd results is to be avoided. (People v. Loeun (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313].)
To interpret the second sentence of section 364, subdivision (c) to mean that a juvenile court, after hearing the evidence, cannot retain jurisdiction over a child just because the Department recommends that jurisdiction be terminated is inconsistent with the first sentence of the provision and with the apparent legislative intent and would lead to an absurd result. The Department, in a letter brief in response to a question from this court, agrees that to read the statute to mean that the juvenile court must terminate jurisdiction unless the Department establishes that jurisdiction must be retained renders the first sentence superfluous and that the juvenile court does not have to follow the recommendations of the Department. As the Department notes, the juvenile court has “an equitable duty to protect the welfare of the children within its jurisdiction.” (In re I.G. (2014) 226 Cal.App.4th 380, 386 [171 Cal.Rptr.3d 867] ,)[5]
Also, it is arguable that giving the Department the power to determine judicial jurisdiction would be a violation of the state Constitution’s provision for the separation of powers. (Cal. Const., art. VI, § 1; People v. Bunn (2002) 27 Cal.4th 1, 15-16 [115 Cal.Rptr.2d 192, 37 P.3d 380]; People v. Tenorio (1970) 3 Cal.3d 89, 95 [89 Cal.Rptr. 249, 473 P.2d 993]; In re S.H. (2003) 111 *212 Cal.App.4th 310, 317 [“power to decide whether any visitation occurs belongs to the court alone” (italics omitted)]; In re M.C. (2011) 199 Cal.App.4th 784 [juvenile court’s authority to direct the social worker to file a § 300 petition does not violate separation of powers]; In re Moriah T. (1994) 23 Cal.App.4th 1367, 1373-1377 [28 Cal.Rptr.2d 705]; In re Danielle W. (1989) 207 Cal.App.3d 1227, 1237 [255 Cal.Rptr. 344].) As the Supreme Court recently said in People v. Gutierrez (2014) 58 Cal.4th 1354, 1373 [171 Cal.Rptr.3d 421, 324 P.3d 245], “When a question of statutory interpretation implicates constitutional issues, we are guided by the precept that ‘ “[i]f a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable.” ’ [Citations.]” Thus, the avoidance of the constitutional issue of separation of powers also supports our interpretation of section 364, subdivision (c). Accordingly, the juvenile court may retain jurisdiction if the evidence supports that retention, irrespective of the recommendation of the Department.
C. Application of Law
There is substantial evidence submitted by the Department and in the record that supports the juvenile court’s determination not to terminate jurisdiction. J.F. resides with mother in a group home. His safety and well-being are monitored or provided for by the staff when mother is at school or otherwise away. The Department reported that the goals for mother included appropriate interaction with J.F. and the recognition of “the importance of managing her frustrations” and keeping J.F. “within her view.” On one occasion, instead of preparing J.F. for a needed doctor’s appointment, mother chose to socialize with friends. It was reported, “Parenting comes second behind socializing for [mother] this quarter.” It was also reported she cursed in front of J.F.
The Department reported that as to communication with her child, mother has “displayed slight improvement . . . [but sometimes] she speaks harshly toward [J.F.]”; mother “has continued to struggle with her supervision of [J.F.]”; and she relied on the staff to change and feed J.F. and to take him to the doctor or school. The counselor reported that mother “will benefit from continued treatment.” The Department in its assessment said that mother’s “parenting and mental health concerns that brought her to the attention of [the Department] and Children’s court remain a work in progress.” The caseworker “conducted an assessment and determined that the risk level in regard to this case is Moderate.”
*213 Further, mother was eligible for special education services “under the criteria of a specific learning disability and secondary disabilities such as speech and language impairment and emotional disturbances.” There is no evidence concerning mother’s capacity to live independently. The evidence is sufficient to support the juvenile court’s retention of jurisdiction.
DISPOSITION
The order is affirmed.
Mink, J.,* concurred.

 All further statutory references are to the Welfare and Institutions Code.

 Sometimes confusingly referred to in the record as “paternal great grandmother,” “maternal grandmother," and “maternal great grandmother.”

 Mother requested we judicially notice a minute order indicating that on July 14, 2014, the juvenile court terminated jurisdiction. J.F. opposed taking judicial notice that jurisdiction had been terminated and noted that any such order was not final and would be appealed. Mother also filed an abandonment of appeal and requested that we dismiss the appeal. We have discretion whether to dismiss the appeal (Cal. Rules of Court, rule 8.411(b)(2); In re Marriage of Barneson (1999) 69 Cal.App.4th 583, 585, fn. 1 [81 Cal.Rptr.2d 726].) We grant mother’s request for judicial notice, but, notwithstanding possible mootness and the request for dismissal, we exercise our discretion and decline to dismiss the appeal as the issue involved is of sufficient importance and of continuing interest. (In re William M. (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; In re Shigemura (2012) 210 Cal.App.4th 440, 451, fn. 4 [148 Cal.Rptr.3d 230].)

 In her brief, mother states, “the California Legislature found that the juvenile court shall terminate its jurisdiction ‘unless’ [the Department] establishes by a preponderance of evidence that conditions still exist which would justify initial assumption of jurisdiction under section 300 or that these conditions are likely to exist if supervision is withdrawn.”

 Mother has joined in the letter brief submitted by the Department.

Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.