Filed 3/24/16  In re Carlos G. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re CARLOS G., JR. et al., Persons Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CARLOS G., SR., <br><br> Defendant and Appellant. | B265464 <br> (Los Angeles County <br> Super. Ct. No. DK03644) |

APPEAL from an order of the Superior Court of Los Angeles County, Debra Losnick, Commissioner.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Carlos G. Sr. (Father), father of Carlos G., Jr., Juan G. and Alex G., all between five and ten years old, contends the juvenile court erred in terminating jurisdiction over the children and abused its discretion by not acting in their best interests in formulating the final custody order.[1]  Finding no error or abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the Department of Children and Family Services (DCFS) in February 2014, when it received a report of ongoing domestic violence between the parents.  Interviewed by the caseworker, Father reported that the children's mother, J.A. (Mother), had threatened him with a knife a few days earlier.  He had initiated a family law matter seeking custody of the children.[2]  Mother reported Father had a gun, had been violent in the past, and that she was fearful for her safety.

The children were detained and, after a brief stay in foster care, placed with paternal relatives.  They reported no physical abuse by Mother or Father, but said they were frightened by their parents' frequent loud arguments.  They reported witnessing no physical violence between their parents, other than the February 2014 incident in which Mother brandished the knife, and reported that she also had broken a cell phone on that occasion.

---

[1]    Although the term does not appear in the statutes, the order of a juvenile court terminating jurisdiction and providing for the custody of dependent children is often referred to as an "'exit order.'"  (See *In re John W.* (1996) 41 Cal.App.4th 961, 970, fn. 13.)  We use that term when referring to the order on appeal.

[2]    Mother and Father were not married, but were living together.  They separated shortly after the children were detained.

At the April 2014 jurisdictional/dispositional hearing, the court found true that Mother and Father had "a history of engaging in violent physical altercations" and that "[o]n 02/09/2014, [Mother] brandished a knife at [Father], in the children's home while the children were present" and broke a cell phone, establishing a basis for jurisdiction under Welfare and Institutions Code section 300, subdivision (a) (serious physical harm).[3] Both parents were ordered to participate in parent education, Parents Beyond Conflict, individual counseling and a domestic violence programs -- Mother in a perpetrator's program and Father in a program for victims. Mother was permitted monitored visits only. Father was allowed unmonitored visits in the children's placement.

By September 2014, the caseworker reported that Father had completed the required parenting and domestic violence programs, and was participating in individual therapy. Father's therapist reported he was ready to have his children back. DCFS had begun permitting him unmonitored overnight visitation in July. Mother had completed a parenting class, and was participating in a domestic violence program and individual counseling.[4] Her therapist reported no concerns about her parenting abilities. Her domestic violence counselor stated she presented as "'a loving, caring and discerning mother regarding the needs of her children and is sensitive to their well-being.'" The children enjoyed Mother's visits, but the caseworker expressed concern about multiple instances in which Mother appeared to have induced the children to fabricate stories of abuse and neglect against their paternal relatives.[5]

---

[3]      Undesignated statutory references are to the Welfare and Institutions Code.

[4]      Neither parent had completed the Parents Beyond Conflict program as it had been cut from the budget. Mother eventually completed ten hours of an alternate program.

[5]      The reports reflect that the allegations were investigated and found to be unfounded or inconclusive. The reports further reflect that on several occasions, the

*(Fn. continued on next page.)*

In November 2014, at DCFS's recommendation, the children were returned to their parents' custody. The court retained jurisdiction and instructed DCFS to provide supervision and family maintenance services. For the next six months, the children spent alternate weeks in each parent's home. Mother was living with the maternal grandmother, whose home was located a considerable distance from Father's home and the children's school.

In May 2015, just prior to the final hearing, DCFS received a report from the maternal grandmother that Mother was involved with a "sexual abuser," a man she had known since her teens, and had moved from the grandmother's home. The children were with Father at the time, and at the caseworker's recommendation, the court ordered that they stay there until Mother's living arrangements were ascertained and any potential housing companions live-scanned. The May 19 report reflected the caseworker's concern that both parents were causing the children unnecessary stress by making regular calls to DCFS to report "'child abuse worries.'" Because the children were being well cared for by both parents and were doing well in school, the caseworker concluded there was no need for further action.

By the time of the final hearing in June 2015, Mother had agreed to discontinue the relationship that had caused concern and resume living with the maternal grandmother. The grandmother agreed to let Mother move back, provided she understood "if she is going to be here she is not going to be with that man." Mother stated her intent to find a residence closer to Father and the

_____

children told the caseworker and their caregivers they wanted to visit Mother more often and to have longer visits with her. When the caseworker observed a visit in September 2014, the children were visibly upset at the prospect of leaving Mother. At the end of a later visit observed by the caseworker, "Juan was crying and told [M]other he wanted to go home with her."

children's school in the near future, when her financial circumstances permitted. DCFS recommended termination of jurisdiction with an exit order providing for joint custody.

At the June 1, 2015 hearing, the court acknowledged DCFS's recommendation for termination of jurisdiction with 50/50 custody and asked if anyone wished to be heard. Father's counsel did not object to termination of jurisdiction or joint custody, but asked for an alternative arrangement: either that Mother move closer to the children's school or that Father be given custody during the week and Mother on the weekends to save the children from the long commute from the grandmother's home. The court asked Mother's counsel to respond. Counsel reminded the court that the children had been living in the same location with Mother during the preceding six months of shared custody. The children's attorney noted that the children were about to go on summer break, and suggested there was time for the issue to be resolved by the parents before the next school year. The court agreed this was something the parents should work out, and observed that being transported a long distance for school was "not optimal" for the children, but "does happen every day." The court also noted the existence of the open case in family court should the parents wish to modify custody in the future. No one raised any concerns about Mother's recent romantic relationship or her ability to safely care for the children. The court found no risk to the children from either parent and terminated jurisdiction, "awarding joint 50/50 legal custody and physical custody to the parents." Father appealed.

## DISCUSSION

A. *Termination of Jurisdiction*

Father contends the court "should have delayed terminating jurisdiction" and that it "failed in its responsibility to act in the . . . children's best interests when it

5

terminated jurisdiction" before DCFS completed an investigation of the man Mother was dating in May 2015. However, he failed to object to the termination of jurisdiction below on this or any other basis. Accordingly, he has forfeited the contention. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [dependency matters not exempt from the rule that "a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"].)[6] Moreover, were we to overlook the forfeiture and review on the merits, we would have no basis to overturn the termination of jurisdiction.

The final hearing was held under section 364, subdivision (c), which applies "when a child not removed from the parent is receiving family maintenance services" (*In re J.F.* (2014) 228 Cal.App.4th 202, 209), and states that after hearing evidence, the court "shall terminate its jurisdiction" unless a preponderance of the evidence establishes "that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c).) "Orders made pursuant to section 364 are reviewed for substantial evidence. [Citations.] Under the substantial evidence standard of review, the appellate court does not reweigh the evidence, evaluate the credibility of witnesses, or draw inferences contrary to the findings of the trial court. [Citation.] The appellate court 'accept[s] the evidence most favorable to the order as true and discard[s] the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact.'" (*In re J.F.*, *supra*, 228 Cal.App.4th at p. 209, quoting *In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) Moreover, as explained in *In re Aurora P.* (2015) 241 Cal.App.4th 1142, because

---

[6] Appellant contends the forfeiture may be overlooked because whether the court erred in terminating jurisdiction raises only questions of law. To the contrary, such decision requires application of law to facts.

6

the statute states that the court "shall" terminate jurisdiction unless "the conditions still exist which would justify initial assumption of jurisdiction under section 300, or that those conditions are likely to exist if supervision is withdrawn" (364, subd. (c)), "[w]here . . . the social services agency recommends termination of jurisdiction, termination will be the 'default result' unless either the parent, the guardian, or the child objects and establishes by a preponderance of the evidence that conditions justifying retention of jurisdiction exist or are likely to exist if supervision is withdrawn." (*In re Aurora P.*, *supra*, 241 Cal.App.4th at p. 1163.)

Father's contention rests on the allegation that Mother was dating a "'sex abuser.'" The evidence presented did not establish that the man Mother was dating was a sex abuser or explain why the grandmother thought he was. More important, the evidence was undisputed that the relationship was brief, that Mother discontinued it and returned to the home of the maternal grandmother when she learned of the caseworker's concerns, and that she agreed not to reestablish contact with the man. The court was not required to discredit Mother's representation, particularly as she and the children were living with the maternal grandmother who had reported the relationship to DCFS. Substantial evidence thus supported the court's determination that continuation of jurisdiction was unwarranted.

### B. *Custody Order*

Father contends the custody order must be reversed because it was not in the best interests of the children, and that the court abdicated its *parens patriae* duty. We disagree.

"'When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation. [Citations.] Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court.

7

[Citation.]'" (*In re A.C.* (2011) 197 Cal.App.4th 796, 799, quoting *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) "Although both the family court and the juvenile court focus on the best interests of the child, the juvenile court has a special responsibility to the child as *parens patriae* and must look at the totality of the child's circumstances." (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30-31.) Accordingly, the usual presumption that joint custody is in the best interest of the child is not given effect, and the court must make custody determinations "based on the best interest of the child without any preferences or presumptions." (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712; accord, *In re John W.*, *supra*, 41 Cal.App.4th at pp. 973-974.) Custody determinations are "committed to the sound discretion of the juvenile court, and [its] ruling should not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) When two or more inferences could reasonably be drawn from the facts before the court at the custody hearing, we have no authority to substitute our judgment for that of the court. (*Id.* at p. 319.)

Father contends the court abused its discretion in allowing Mother to share custody when she was dating a "sex[ual] abuser." As we have said, no party raised this issue at the hearing and on the evidence presented, the court could reasonably find that Mother had terminated the relationship and that the children were not in danger in her custody.

Alternatively, Father contends the court failed to recognize its discretion to issue a custody order that departed from the standard 50/50 joint custody. He points to nothing in the record to support that contention. The court, having heard Father's request for a greater percentage of custody, did not suggest such an arrangement was beyond its power to grant, but asked for the other parties'

8

responses.[7]  After being reminded that the children already had been commuting from the grandmother's home for a significant period with no evidence of adverse results, and that the children were about to go on summer break, the court acceded to DCFS's recommendation -- a recommendation in which the children's attorney joined.  That the court's order was in the best interests of the children is further supported by the evidence that the children missed Mother when they were detained from her, that they were very unhappy when their visits were cut short or limited to brief periods, and that both parents were viewed as having good parental skills by their service providers and the caseworker.  The court did not abuse its discretion in concluding that custody should be split equally between the parents.

---

[7]  This distinguishes the instant case from the authority relied on by Father, *In re John W.*, *supra*, 41 Cal.App.4th 961.  There, the juvenile court issued the custody order giving each parent 50 percent custody "based on the false assumption that he had to split physical custody because there was no evidence one parent was any better or worse than the other" rather than by considering "the best interests of the child, in the context of the peculiar facts of the case before the court . . . ."  (*Id*. at p. 965, italics omitted; see *Ruelas v. Superior Court* (2015) 235 Cal.App.4th 374, 383 [where nothing in the record suggested juvenile court failed to recognize and exercise its discretion, appellate court followed general rule that "'on a silent record the "'trial court is presumed to have been aware of and followed the applicable law'" when exercising its discretion'"].)

## DISPOSITION

The court's exit order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.