Filed 10/22/20  In re T.M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).   This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re T.M., a Person Coming Under the Juvenile Court Law. | B302966 (Los Angeles County Super. Ct. No. 19CCJP00172A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> H.M., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kim L. Nguyen, Judge.  Affirmed.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, Navid Nakhjavani, Principal, Deputy County Counsel, for Plaintiff and Respondent.

_____

## I.    INTRODUCTION

H.M., father of now eight-year-old T.M., appeals from the juvenile court's order at a Welfare and Institutions Code section 364[1] hearing continuing jurisdiction over the child. We affirm.

## II.    BACKGROUND

A.    *Prior Dependency History*

In January 2017, the juvenile court sustained a section 300 petition that alleged P.M, the child's mother,[2] had a history of engaging in violent altercations and had hit father with a broom in the child's presence. The petition further alleged that mother had a history of alcohol abuse and was a current alcohol abuser rendering her incapable of providing the child regular care. Mother also had a criminal conviction for "Disorderly Conduct: Intoxicated Drugs/Alcohol." The court removed the child from

---

[1]    All statutory references are to the Welfare and Institutions Code.

[2]    Mother is not a party to this appeal.

mother's custody, placed her with father, and ordered family reunification services for father and mother. In October 2017, the court ordered the child returned to mother's custody. In January 2018, the court terminated jurisdiction with the child placed with both parents.

B. *Section 300 Petition*

On January 10, 2019, the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition on behalf of the child. As later amended, pleaded no contest to by mother, and sustained by the juvenile court, the petition alleged:

"b-1

"The child[']s . . . mother . . . has a history of alcohol use and is a current user of alcohol, which affects . . . mother's ability to provide regular care of the child. On 12/23/2018, . . . mother was under the influence of alcohol while the child was under . . . mother's care and supervision. The child is of such a young age as to require constant care and supervision and . . . mother's alcohol use interferes with providing regular care and supervision of the child. The child was a prior dependent of the Juvenile Court due to . . . mother's alcohol use. Said substance abuse by the child's mother endangers the child's physical health and safety and places the child at risk of serious physical harm.

"b-2

"The child[']s . . . mother . . . has a history of mental and emotional problems, including a history of PTSD, depression, and anxiety and a recent diagnosis of bipolar disorder and current suicidal ideation if left untreated affects . . . [m]other's ability to

3

provide regular care for the child.  On 1/8/2019 and 12/23/2018 . . . mother expressed suicidal ideation.  On 1/8/2019 . . . mother was voluntarily hospitalized for the evaluation and treatment of . . . mother's psychiatric condition.  Such mental and emotional problems on the part of . . . mother endangers the child's physical health and safety and places the child at risk of serious physical harm."

C.    *Detention Report and Hearing*

On December 13, 2018, mother and the child entered a domestic violence shelter.  On December 24, 2018, the Department received a referral after mother disclosed to her counselor the previous night that she wanted to die.  Mother was intoxicated and manic at the time.  Later that night, the child spoke with the counselor.  The child was crying and stated that mother had been mean to her and told her to cook her own food.  She told the counselor that mother behaved that way when she drank "'water that is not water.'"  Mother told the child that she could not care for her anymore, that father could care for her, and that mother would not "be 'here'" anymore.  When the counselor checked in on mother later that night, mother was slumped over.

After receiving the referral, a Department social worker interviewed the domestic violence shelter's manager, mother, and the child.  The manager stated that mother and the child could stay at the shelter for 45 days.  Mother was on a waitlist for transitional housing.  If mother was unsuccessful in obtaining transitional house, she would be given referrals for homeless shelters.

Mother told the social worker that she had been very emotional the day before because it was Christmas and she and the child were in a shelter. Also, mother did not have enough money to buy the child the Christmas gift she wanted. Mother denied having been intoxicated. The social worker described mother as cooperative and easy to engage. Mother displayed no visible signs of cognitive impairment or substance abuse. She spoke in an intelligent manner.

Mother told the social worker that she and the child were living in the shelter because she did not want the child living in a domestic violence environment. The child had been sleeping with a spatula in her hand to protect mother at night. Mother explained, however, that father had never physically abused her. The domestic violence "was mostly verbal and emotional." Father yelled a lot.

Mother stated that father previously used heroin, but had been sober for 14 years. He did not drink alcohol. Mother denied she was an alcoholic. A December 26, 2018, drug and alcohol test for mother was negative.

The child, then age six, was clean, neatly groomed, and appropriately dressed. She was easy to engage and verbally articulate. The child liked living with mother. She knew what drugs and alcohol were and denied witnessing mother "drink alcohol or smoke." She also denied telling anyone that mother drank something that was not water. The child said mother never drank beer.

The child told the social worker that mother was not mean to her, but father was. She felt safe with mother, but not with father. The child denied physical abuse from mother or father. She was, however, afraid of father and reported that he yelled at

and punched mother. The social worker observed that the child appeared to have been coached prior to the interview.

The social worker spoke with the social worker who had worked with the family in 2017. That prior social worker reported that there were no problems with father during her supervision and he took great care of the child and did everything he possibly could for her. The child loved father and always was very affectionate toward him.

On December 27, 2018, the social worker interviewed father. Father denied being abusive or violent toward mother. He said he and mother argued, but he tried not to argue in front of the child. After the prior case was closed in January, mother relapsed "a couple of times." He said when mother was not drinking, she was an excellent mother. But, when mother drank, she "create[d] so much chaos and changes the whole dynamic." Father stated, "'I love [mother], I want my family back, but most importantly I want my daughter back.'" Father said he told mother that he would move out of their apartment and pay half the rent, but mother had to work and pay the other half.

Father admitted he used heroin when he was younger, but stated he had been sober for 15 years. He was willing to take a drug test. A December 28, 2018, drug and alcohol test for father was negative.

On December 28, 2018, mother and the child moved out of the shelter and back home with father. Father told the social worker they were doing well. Father was monitoring the child closely and would not let her out of his sight.

On January 3, 2019, the juvenile court issued a removal order for the child. The child was to be removed from mother and released to father. Four days later, before the removal order was

6

served, mother moved out of the home.  The next day, the social worker received a referral from the Mission Community Hospital.  Mother had entered the emergency room heavily intoxicated and had stated her intention to kill herself.  Mother was placed on a psychiatric hold.

On January 8, 2019, the social worker visited father at his home.  The child was present and appeared happy.  Father stated that mother had called him and told him she was in the hospital.  He said that for the past couple of days, mother "always smelled like alcohol."  Father said that he never left the child alone with mother.  He had enrolled the child in school and informed the school staff that mother was not allowed to pick up the child.  Father stated that he wanted full custody of the child and inquired if the Department could help him get a divorce.

The child stated she was happy to be back with father and felt safe with him.  The social worker asked the child about her prior statement that father was mean.  The child responded that father had changed.  When the social worker asked if she had ever seen mother "drink 'water that is not water'" or beer, the child looked down, then at the social worker, and said that she did not want to go to foster care; she wanted to stay with father.  When the social worker asked who told her she would go to foster care, the child responded, "'My mom.'"

The social worker asked the child to tell the truth.  The child stated that mother drank beer.  The social worker asked how many.  The child responded, "'Ten or more, she would never stop.'"  She said that when mother drank, "'She was mean to me.  She told me she doesn't love me.  She hit me with her shoe two days ago on my shoulder.'"

The social worker spoke with mother at the hospital. Mother said she went to the hospital because she felt depressed. The social worker asked mother if she was presently intoxicated. Mother looked surprised and responded, "'I do not drink.'" The social worker served mother with the removal order and informed her that she could not return home.

At the detention hearing, the juvenile court found a prima facie case for detaining the child from mother. It ordered the child released to father and family maintenance services for mother, father, and the child.

D.      *Jurisdiction/Disposition Report and Hearing*

On February 1, 2019, the social worker interviewed mother. Mother stated she was in a domestic violence situation with father and was trying to deal with it. She denied having an issue with alcohol, stating she had not drunk alcohol for a long time. When she did drink, "'[I]t's more of a fuck you to him [father] because he thinks he is high and mighty because he is sober.'" Mother reported she recently had been diagnosed with bipolar disorder. She had been taking Zoloft, but father did not want her to take it so she stopped.

On February 5, 2019, the social worker interviewed father and the child. Father said mother was an alcoholic with "'no moral compass.'" Mother drank alcohol "'sporadically,'" and father smelled alcohol on her and in the home. Every other month, mother binge drank, drinking for "'days on end.'" Father denied committing domestic violence.

The child stated that mother drank beer and threw a shoe at the child. Mother acted a little weird when she drank beer and

stayed in bed and hid the beer from father.  Living in a shelter with mother was "'not good.'"  The child had wanted to continue living with father, but mother kidnapped her.  Mother drank heavily while staying in the shelter and acted mean.

In its assessment, the Department noted that one year earlier, the juvenile court had closed the prior case with the hope that mother had resolved her problem with alcohol as she had been compliant with court orders.  Instead, mother's alcohol use had caused another dependency referral and mother continued to minimize her alcohol abuse.

As for father, the Department expressed its concern that father also minimized mother's serious alcohol problem and had a lack of insight into how mother's alcohol problem negatively affected the child.  Father permitted mother to live in the home despite her binge drinking and did not intervene to protect the child.  It opined, "It is crucial that father participate in services in order to understand the negative ramifications that mother's extensive alcohol and mental health issues have on [the child]."  The Department recommended that father participate in family preservation services and weekly Al-Anon and AA/NA meetings.

For the February 22, 2019, jurisdiction/disposition hearing, mother submitted a waiver of rights form pleading no contest to the amended section 300 petition.  At the hearing, the juvenile court accepted mother's no contest plea and found the amended section 300 petition true and the child to be a person described by section 300.  It removed the child from mother's custody and released her to father.

The juvenile court ordered mother to participate in a full drug and alcohol treatment program, submit to weekly testing, participate in a 12-step program, attend parenting classes, and

9

undergo individual and mental health counseling.  The court ordered monitored visits for mother and the child.  It ordered father to participate in a 12-step program, Al-Anon meetings, and family preservation services.

E.      *Six-Month Status Review Report and Hearing*

In the Department's August 23, 2019, Status Review Report, the social worker reported that the child was doing well in father's custody.  Father had provided the child with stable shelter, food, clothing, and all the basic necessities.  The child was attending school regularly and excelling academically.  Father had enrolled her in a summer tutoring program.  At monthly contacts with the social worker, the child was well-groomed with a generally pleasant overall disposition.  The social worker observed positive interactions between the child and father during those contacts and with mother during visits the social worker monitored.

The social worker reported that mother had been "fully compliant, cooperative, amenable and receptive" to the court-ordered programs and the Department's case plan.  Mother traveled three hours each way by bus to visit the child and never missed a visit.  Mother visited twice a week.  Beginning June 20, 2019, mother's visits were unmonitored.  Mother was employed.  Her therapist reported mother had not missed any appointments and was doing well in treatment.  Mother's participation in relapse prevention, parenting, and life skills programs had been "outstanding."  All of mother's drug and alcohol tests were negative except two in March which may have been "no show[s]."

Father told the social worker that he was attending weekly Al-Anon and AA/NA meetings. He had not, however, provided the social worker proof of attendance. Initially, he was not attending family preservation services, telling the social worker that he did not have time as he had two jobs. When the social worker reminded father that the services were court-ordered, father began attending on April 25, 2019.

The child's therapist recommended the family receive wraparound services. At the time the Department prepared its report, the family had not started such services.

Mother repeatedly told the social worker that she would do "everything" to obtain joint custody of the child. Father repeatedly told the social worker that he was unwilling "to have anything to do with mother" and would do his best to get full custody of the child. The child told the social worker that she loved both of her parents and liked having them in her life. She enjoyed visits with mother and missed her a lot.

Mother's housing was a "barrier" to having overnight visits with the child. Mother was on the waitlist for two housing programs. The Department recommended the juvenile court continue jurisdiction over the child for three months for mother to obtain stable housing and have conjoint therapy with the child. It further recommended that the court continue family maintenance services for father for three months.

At the August 23, 2019, section 364 hearing, father requested the juvenile court set the matter for a contested hearing concerning whether the case should be closed. Mother requested a contested hearing on whether the child should be returned to mother's custody—a home of parent order. The

11

juvenile court set the matter for a contested hearing on October 28, 2019.

In an October 25, 2019, Last Minute Information for the Court, the Department reported mother had started having overnight visits with the child on September 7, 2019. Father showed "positive cooperation" in transporting the child to a police station for mother to pick her up. The child told the social worker that she was having fun, quality visits with mother. Also, mother was fully compliant with her court-ordered services. Father had provided proof of his attendance at Al-Anon and AA meetings.

The Department advised the juvenile court that mother remained in transitional housing. From the beginning of the case, it had assisted mother in her search for permanent housing. Mother was on the waitlist at two permanent housing agencies. The Department asked the court to set a progress report for 90 days for an update on mother's housing.

At the October 28, 2019, hearing, counsel for the Department stated that the Department had not submitted an appropriate recommendation. Counsel requested a two-week continuance for the Department to prepare an appropriate recommendation.

The child's counsel informed the juvenile court that the child was doing well with father and her visits with mother were going well. The child wanted to live with both parents.

The juvenile court asked if housing was an issue. Mother's counsel explained that mother was in transitional housing and the child was not permitted to live there. Mother was doing her best to obtain permanent housing. Counsel recognized that the matter had been set for a hearing on a home of parent order at mother's request and mother's residence in a sober living facility

12

where the child could not live was a "barrier" to a home of parent order.  Counsel supported the Department's request for a continuance.

Father's counsel objected to a continuance.  He argued that the Department had over two months to prepare a proper recommendation.

The juvenile court stated its tentative ruling that it would continue supervision for three months.  It believed mother was making progress.  She had been having overnight visits with the child who had been unwavering in her desire to reunify with mother.  Given the child's age, the court believed it was in the child's best interest to continue supervision to allow the Department the opportunity to help mother find housing and to allow the court to assess how overnight visits were going.

Father's counsel objected to the juvenile court's tentative ruling.  He argued that under section 364, the juvenile court was required to terminate jurisdiction unless the Department proved by a preponderance of evidence that conditions still existed that would justify jurisdiction over the child or those conditions were likely to exist if supervision were withdrawn.  He noted that the Department's Status Review Report stated that the child was doing well in his care and excelling in school, he had been cooperative in exchanging the child with mother for visits, and he had been attending his Al-Anon and AA meetings.  The case concerned mother's alcohol abuse and mother claimed to be sober.  Counsel argued that the case should not remain open simply because one parent had a housing issue.

The Department's counsel reiterated the Department's request for a two-week continuance to prepare a proper recommendation.  Counsel submitted "as to three months."  She

noted that as late as the Status Review Report, father indicated he wanted nothing to do with mother and would do his best to get full custody over the child. Counsel expressed doubt that the parents were ready to coparent.

The juvenile court denied the continuance request. It found that the conditions that justified the initial assumption of jurisdiction continued to exist and were likely to exist without supervision. The court set the matter for a section 364 hearing on January 28, 2020.

## III. DISCUSSION

Father contends that substantial evidence did not support the juvenile court's section 364 ruling. We disagree.

A. *Standard of Review*

"Orders made pursuant to section 364 are reviewed for substantial evidence. [Citations.] Under the substantial evidence standard of review, the appellate court does not reweigh the evidence, evaluate the credibility of witnesses, or draw inferences contrary to the findings of the trial court. [Citation.] . . . . For evidence to be sufficient to support a trial court's finding, it must be reasonable, credible, and of solid value. [Citation.]" (*In re J.F.* (2014) 228 Cal.App.4th 202, 209.)

B. *Legal Analysis*

Section 364, subdivision (a) provides in part: "Every hearing in which an order is made placing a child under the

14

supervision of the juvenile court pursuant to [s]ection 300 and in which the child is not removed from the physical custody of his or her parent or guardian shall be continued to a specific future date not to exceed six months after the date of the original dispositional hearing." Subdivision (c) provides in part: "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under [s]ection 300, or that those conditions are likely to exist if supervision is withdrawn."

Father argues that the juvenile court should have terminated jurisdiction because the evidence showed that the child was doing well in his care and there was no risk to the child in his home. As the child "was out of [m]other's home and safely living with [f]ather, there was no necessity to protect her from risk of serious physical harm or illness." Father contends that the juvenile court continued jurisdiction over the child out of a concern for mother's lack of housing.[3]

Substantial evidence supported the juvenile court's order. The juvenile court sustained the amended section 300 petition in part because mother had a history of alcohol use that affected her

_____

[3] Although the juvenile court found, based on the evidence presented, that the conditions that justified the initial assumption of jurisdiction continued to exist and were likely to exist without supervision, it did not further explain its ruling. "[W]e review the lower court's ruling, not its reasoning; we may affirm that ruling if it was correct on any ground." (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 38.)

ability to care for the child.  That history included the child's prior case that began in October 2016—the court sustained the petition in January 2017—in which the court found that mother's alcohol abuse rendered her incapable of providing regular care for the child.  Mother successfully completed services in that case, including a drug and alcohol program, and the court returned the child to mother's custody in October 2017 and terminated jurisdiction in January 2018.  Notwithstanding mother's successful completion of services, mother relapsed sometime later in 2018.

Mother's sobriety at the time of the section 364 hearing was relatively short-lived and mother was at risk of relapsing as she had in the past.  (See *In re J.C.* (2014) 233 Cal.App.4th 1, 7 [seven months of sobriety were insufficient to show the parent was not at risk of relapsing].)  On January 8, 2019, mother entered an emergency room heavily intoxicated and expressed an intent to kill herself.  The record does not reflect when mother achieved sobriety thereafter.  The section 364 hearing was on October 28, 2019.  As in the child's prior case, mother appears to be doing well in her court-ordered services.  It is significant, however, that at the time of the section 364 hearing, mother was maintaining her sobriety with the support of a sober living facility.  Mother's history of alcohol abuse and relapsing and her recent sobriety continued to place the child at risk as mother had unmonitored visits with the child including unmonitored overnight visits.

Whether sufficient evidence supported continued jurisdiction is a close question.  We observe that father has provided commendable care to the child and mother has performed well under court-ordered services.  Nevertheless, when

16

considering the events as of the January 28, 2020, hearing we find the evidence legally sufficient.

## IV.   DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


KIM, J.


We concur:



RUBIN, P. J.



MOOR, J.