Filed 10/16/25  In re T.A. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re T.A., a Person Coming Under the Juvenile Court Law. | B341418 (Los Angeles County Super. Ct. No. 20CCJP03114B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.A., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## I. INTRODUCTION

T.A., Sr. (father) appeals from the juvenile court's order terminating dependency jurisdiction under Welfare and Institutions Code section 364[1] and its exit custody order, which granted joint legal and physical custody of the child, T.A. (the child), to him and the child's mother, A.S.[2] (mother). Father argues the court's termination of jurisdiction was premature because further investigation was needed to ensure the child was safe in mother's care. In the alternative, father argues the court should have granted him sole physical custody of the child. We affirm.

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Mother is not a party to this appeal.

2

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Jurisdiction*

On February 28, 2023, the Los Angeles County Department of Children and Family Services (the Department) filed a section 300 petition on behalf of the then five-year-old child and his half-sibling J.H.[3], which alleged, as relevant to this appeal, that father used inappropriate discipline on the child and mother failed to protect the child from exposure to domestic violence between mother and her male companion.  On November 21, 2023, the juvenile court sustained those allegations, declared the child a dependent of the court, released him to mother, and ordered family preservation services for the parents.

In a May 6, 2024, status review report, the Department recommended terminating jurisdiction at the upcoming section 364 hearing.  The report included a statement from father that the child was "saying things [were] happening at . . . mother's house."

At the June 4, 2024, section 364 hearing, the juvenile court, at the child's request, continued the matter to give the Department time to investigate whether the child was being abused in mother's home.

The Department filed several last minute information updates before the continued hearing reporting that (1) on June 12, 2024, at a multi-disciplinary meeting, the team discussed "the possibility of [the child] being coached and learning verbiage that is not consistent with his age"; (2) on June 25, 2024, another team determined father was not a threat

---

[3]    J.H. is not a subject of this appeal.

to the child, but could not rule out that father was coaching the child to say things about mother; and (3) on July 12, 2024, the child had scratches on his face which the child explained were acquired in mother's care, when his adult uncle held him down and allowed his one-year-old sibling to scratch him. The child looked up at father for approval when he made the statement to the social worker.

On July 19, 2024, the juvenile court held a section 364 hearing. Without objection, the court terminated jurisdiction and granted the parents joint legal and physical custody, but stayed its order until the filing of a custody order prepared by the parties. The court scheduled a custody order hearing for August 30, 2024.

B.      *August Allegation of Abuse and Subsequent Investigation*

On August 2, 2024, the Department opened a referral on behalf of the child based on a report by father that mother had physically abused the child. On August 7, 2024, a social worker went to mother's home to assess the child, but the child refused to speak with the social worker. On August 9, 2024, a nurse practitioner conducted a forensic examination of the child. Father shared with the nurse photographs of the child taken on August 1, 2024, the date of the alleged incident, that showed a bump and redness to the left side of the child's forehead and a linear abrasion to the abdomen. According to the nurse, the child explained the injuries as follows: "My mother . . . became upset when my sister put the plunger on the bathtub. Then, she stomped on my head once against the bathtub, she put her foot on the back of my head and my forehead hit the bathtub. Then

4

she grabbed a broom from the kitchen and hit me twice.  From that, I got a bump on my forehead and also a scratch on my belly.  I don't feel safe with my mother.  I do feel safe with my father."  The nurse opined the photos were "consistent with the history of mechanism of injury provided by the patient."  She concluded that her physical exam findings and observations from the photographs were "non specific" for physical abuse but were "consistent with the patient's disclosure."  (Boldface, italics, and underscoring omitted.)  The Department reported that "[t]he continual expression and wording used by the child is not of a seven-year-old child, which appears of an adult speech."

At the August 30, 2024, hearing, father and the Department asked the juvenile court to continue the hearing so that the Department could complete its investigation into the new allegations of abuse.  The court continued the hearing.

On September 13, 2024, the Department closed the referral as inconclusive.  It then recommended the court proceed with the termination of jurisdiction and grant the parents joint legal and physical custody.

At the September 26, 2024, continued hearing, the child's attorney advised the juvenile court that the child did not feel safe with mother and wished to remain with father.  Mother's attorney suggested that father had coached the child to make allegations against mother.  The child's counsel requested further investigation by the Department, including consulting the child's therapist.  The court agreed to another continuance and ordered the Department to conduct further investigation.  The court specifically ordered:  "[The Department] is to submit [a last minute information] by 10/07/2024 addressing why [the Department] reached an inconclusive result.  [The Department]

5

is to interview the therapist to see if there are any concerns of physical abuse by [m]other.  [The Department] is to confirm whether or not it had considered the [forensic medical report].  If it had not, [the Department] is to consider these findings.  [The Department] is to interview the minor privately without [f]ather being present about his desire to live with [f]ather only and have monitored visits [with mother]. . . .  [The Department] is to provide an update as to whether the [child] is attending individual counseling and school when in [f]ather's care."

On October 4, 2024, a social worker interviewed the child privately, and the child stated that he was not scared of mother and wanted to live with both parents, alternating weeks.  In an October 7, 2024, last minute information, the Department reported that the allegations of physical abuse remained inconclusive and again recommended the juvenile court terminate jurisdiction with a custody order granting both parents joint legal and physical custody.  The Department explained: "The child was interviewed on separate occasions and gave inconsistent accounts of the event, and the child was only able to give an account when the father was present.  The child seemed to look for approval from [father] . . . .  During face-to-face interaction, the child showed no signs of being fearful of the mother."  Although numerous adults who supported the child, such as his social worker, pediatrician, therapist, and social services providers, were interviewed, none of them reported concerns of abuse or neglect.  The child expressed no fear of mother and stated his desire to live with both parents.  The Department presented the case, including the forensic medical report, to the Eliminating Racial Disproportionality and Disparity committee, which came to the consensus that "parallel

parenting with both parents" was best for the child. The child was receiving mental health services for his ADHD, and his attendance at school had improved.

C.     *Termination of Jurisdiction and Exit Custody Order*

At the October 8, 2024, continued hearing, counsel for the child and counsel for father asked the juvenile court to again continue the hearing. Both expressed a desire to review a police report of the alleged abuse, which they proffered would aid the assessment of whether the incident had occurred as the child initially described, but primarily they sought time to "tie up loose ends" with regard to aftercare and prevention services. The child's counsel informed the court that the child was not fearful of mother and wished to live with both parents. The Department and mother opposed the continuance and asked the juvenile court to terminate jurisdiction.

The juvenile court found no good cause for a further continuance. The court noted the Department had concluded its inquiry into the referral, the therapist had no concerns about child abuse, and the entire family was participating in services. The court was not persuaded the police report would clear up the child's conflicting statements about whether mother abused him on August 1, 2024.

With respect to terminating jurisdiction, the court concluded there was insufficient evidence of abuse to keep the case open. The court explained: "I don't really see any compelling information that shows the abuse occurred by a preponderance of the evidence. And if the Department had that evidence, they

would be filing a [section] 342 [petition]. So I don't want to keep the case open just for the law enforcement report."

The juvenile court again terminated jurisdiction, but stayed the order pending receipt of the proposed exit custody order. The court granted the parents joint legal and physical custody conditioned on abiding by a mediation agreement. On October 11, 2024, the court issued the custody order. Father timely appealed.

## III. DISCUSSION

Father contends the juvenile court abused its discretion when it denied his request on October 8, 2024, to continue the section 364 hearing and, instead, terminated jurisdiction and issued an exit order granting him joint legal and physical custody of the child. We disagree.

### A. *Standing*

"Generally, a parent can appeal the judgment in a juvenile dependency matter. ([Former] Cal. Rules of Court, rule 1435(b); *In re Gary P.* (1995) 40 Cal.App.4th 875, 877.) But as in any appeal the parent must also establish he or she is a 'party aggrieved' to obtain a review of a ruling on its merits. (Code Civ. Proc., § 902; *In re Gary P., supra,* 40 Cal.App.4th at p. 877; *In re Vanessa Z.* (1994) 23 Cal.App.4th 258, 260–261.) To be aggrieved, a party must have a legally cognizable immediate and substantial interest which is injuriously affected by the court's decision." (*In re Carissa G.* (1999) 76 Cal.App.4th 731, 734.) Conversely, a would-be appellant "lacks standing to raise issues

8

affecting another person's interests." (*In re Gary P., supra*, 40 Cal.App.4th at p. 876.)

Following the termination of jurisdiction over the child, father retained his parental rights and retained the joint legal and physical custody arrangement that was in place before the filing of the petition. His chief complaint is that the juvenile court allowed mother unsupervised joint physical custody of the child; but mother's relationship with the child is not a legally cognizable interest of father. (*In re Devin M.* (1997) 58 Cal.App.4th 1538, 1541 ["A parent's interest is in reunification. The interest of siblings or other relatives in their relationship with the minor is separate from that of the parent"]; see, e.g., *In re Frank L.* (2000) 81 Cal.App.4th 700, 703 ["[A] parent cannot raise issues on appeal from a dependency matter that do not affect h[is] own rights"].) Although father therefore is not aggrieved by the court's order, for father's benefit, we explain why his appeal is without merit. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

B.  *Father's Arguments*

1.  Continuance

We first consider father's contention that the juvenile court erred when it denied his October 8, 2024, request to further continue the section 364 hearing. Continuances are disfavored in dependency proceedings. (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 585.) A juvenile court may continue a dependency hearing at the request of a parent for good cause and only for the time shown to be necessary. (§ 352, subd. (a); Cal. Rules of Court, rule

9

5.550(a).)  We review a court's denial of a request for continuance for an abuse of discretion.  (*In re Elijah V., supra*, 127 Cal.App.4th at p. 585.)

The juvenile court did not abuse its discretion when it denied father's request for another continuance of the section 364 hearing.  The court had already continued the hearing twice so that the Department could perform an adequate inquiry into the new allegation of abuse, and during the period between August 30, when the court was initially prepared to terminate jurisdiction, and October 8, 2024, the court ordered the Department to perform specific tasks and provide additional information to the court.  The Department's additional investigation demonstrated that the child had given inconsistent accounts of the purported abuse, did not appear fearful of mother, and showed signs of having been coached by father.  The therapist continued to report no concerns of abuse or neglect.  On this record, the court did not abuse its discretion when it found no good cause for a further continuance of the section 364 hearing.  (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1141 ["""On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case . . ."""].)

2.      Termination of Jurisdiction

We next consider father's contention that the juvenile court's order terminating jurisdiction was not in the best interests of the child.  The burden is on the party asking the court to retain jurisdiction to establish by a preponderance of the evidence that conditions justifying retention of jurisdiction exist

10

or are likely to exist if supervision is withdrawn. (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1163; *In re J.F.* (2014) 228 Cal.App.4th 202, 210.) A juvenile court should maintain dependency jurisdiction only so long as necessary to protect the child from the risk of suffering serious physical harm or illness. (See *In re J.N.* (2010) 181 Cal.App.4th 1010, 1024.) We review a juvenile court order terminating jurisdiction pursuant to section 364 for substantial evidence. (*In re Aurora P., supra*, 241 Cal.App.4th at p. 1156.)

By October 8, 2024, the Department's investigation demonstrated that the child was not fearful of mother and showed signs of having been coached by father. Further, the child's therapist reported no concerns of abuse or neglect. Substantial evidence therefore supports the court's conclusion that the child was not at risk of harm.

### 3.    Custody Order

Finally, we consider father's contention that the juvenile court should have awarded him sole physical custody of the child. We review a juvenile court's exit order for abuse of discretion. (See, e.g., *In re Maya L.* (2014) 232 Cal.App.4th 81, 102; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711.) We find no abuse of discretion. Given that the abuse allegation against mother had been found inconclusive, the Department had closed the referral, and the court had concluded the child was not at risk, the court was within its discretion to grant the parents joint legal and physical custody.

11

## IV.    DISPOSITION

The order terminating jurisdiction and the exit custody order are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.