Filed 7/27/23  In re K.M. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.M., a Person Coming Under the Juvenile Court Law. | B321344, consolidated with B323677 (Los Angeles County Super. Ct. No. 20CCJP02157A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MARK M., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Kristen Byrdsong, Judge Pro Tempore. Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

This is the second appeal in this juvenile dependency case. In the prior appeal, we affirmed the juvenile court's orders exerting dependency jurisdiction over K.M. (born 2012), removing K.M. from father's custody and placing her with mother. In this appeal, father challenges (1) the juvenile court's orders in April 2022 and June 2022 rejecting father's request to terminate jurisdiction,[1] and (2) the juvenile court's April 2022, June 2022, and August 2022 orders delineating visitation. Because father's arguments are without merit, we affirm.

---

[1] Although father's notice of appeal from the August 2022 order purports to appeal broadly from "[t]he court's continued jurisdiction and all orders made on 8/8/2022 that may be appealed," his opening brief does not challenge the juvenile court's continued exertion of jurisdiction at the August hearing. (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 653 [issues not argued are waived].)

2

## FACTS AND PROCEDURAL BACKGROUND

**I. Facts Underlying Initial Assertion of Jurisdiction[2]**

Mark M. (father) and K.P. (mother) have one child together, a daughter named K.M., who was born in 2012. They split up within a year of K.M.'s birth, and from that time until March 2020, a family court order was in place granting both parents legal custody of K.M. and granting mother physical custody of K.M. with father having weekend visits.

On March 30, 2020, father physically assaulted mother and K.M. during a custody exchange at a police station. Father drove his car onto the sidewalk in front of mother and K.M. as they walked from the police station to the bus stop, then got out of the car and followed mother and K.M. into an alleyway. Father pushed mother up against a wall, choked her, punched her in the head with a closed fist, threw her to the ground, and stomped on her, inadvertently punching K.M. as well.

This was not father's first physical attack on mother or K.M. He had physically assaulted mother on several prior occasions, including another incident in K.M.'s presence when K.M. was just a baby in June 2012. He had also physically assaulted K.M. at an earlier custody handoff when he chased mother and K.M. and pushed K.M., causing her to fall and hit her head on the ground.

In fact, father has a long history of physical, verbal and psychological aggression toward women in general. He has physically punched his own mother and his sister. He has

---

[2] We draw these facts from this court's prior unpublished opinion affirming the initial assertion of dependency jurisdiction in 2020. (*In re K.M.* (May 21, 2021, B307942) [nonpub. opn.] (*K.M. I*).)

stalked mother as well as another girlfriend, prompting both of them, and his own mother, to obtain restraining orders against him. And he regularly argues with his current girlfriend as well. Father's sister reported that father intimidates people and will "go off on you" if he does not get what he wants.

At the time of the March 2020 incident, father was also a regular marijuana user.

Father denied that he struck mother during the March 2020 incident, denied that he has ever used marijuana, and denied that he has any criminal history despite his prior conviction of crimes that render him a sex offender.

## II. Juvenile Court's Initial Assertion of Jurisdiction

On April 15, 2020, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to assert dependency jurisdiction over K.M., pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b)(1),[3] because (1) father's violent conduct in K.M.'s presence, in conjunction with his history of domestic violence with mother, placed K.M. at substantial risk of physical harm (and mother failed to protect K.M. by allowing father to have unlimited access to her); and (2) father's marijuana abuse rendered him incapable of providing regular supervision of K.M., which also placed her at substantial risk of physical harm.

On September 17, 2020, the juvenile court held the jurisdictional and dispositional hearing. Father testified, and denied striking mother on March 30, 2020 and denied using marijuana. The juvenile court found father to be not "credible in the least." During the hearing, father was also verbally

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

aggressive and rude, and repeatedly interrupted the court. The court sustained the petition as pled, removed K.M. from father, and ordered the Department to provide him reunification services. Father's case plan required him to complete a 52-week domestic violence program, attend parenting classes, participate in individual counseling to address case issues and anger management, randomly drug test, and have monitored visitation with K.M.[4]

The court set a review hearing, pursuant to section 364, for March 17, 2021.

## III. Interim Hearings

### A. *First section 364 hearing (March 2021)*

In the six months between September 2020 and March 2021, father's anger issues were improving to the point where his monitored visits with K.M. no longer required security, and the Department allowed father to have unmonitored visits. Following the hearing, the court ordered dependency jurisdiction to continue but granted father unmonitored visits on weekends and Mondays. The court set the next section 364 hearing for June 2021.

### B. *Second section 364 hearing, and jurisdictional and dispositional hearing involving mother (June 2021)*

In the early part of this next period, mother started to exhibit mental and emotional problems, stopped participating in family preservation services and the domestic violence counseling that was part of her case plan, and stopped taking K.M. to her medical and dental appointments, including for her sickle cell anemia. In mid-April 2021, the Department filed supplemental

---

[4]     This court affirmed the juvenile court's jurisdictional and dispositional orders in our unpublished opinion.

5

petitions under section 342 and 387 seeking to exert jurisdiction over K.M. on these additional grounds and to remove her from mother. At a combined hearing on June 16, 2021 to address the pending supplemental petitions and for the 364 hearing, the juvenile court sustained the supplemental petitions, removed K.M. from mother and placed her with father, ordered dependency jurisdiction to continue, and ordered the Department to provide father with family maintenance services, including a parenting course, individual counseling, and conjoint counseling with K.M. if recommended by father's and K.M.'s therapists. The court set the next section 364 hearing for September 2021.

### C. *Third and fourth section 364 hearings (September 2021, December 2021/January 2022)*

In the six months between June 2021 and December 2021, mother did not visit K.M. regularly, but K.M. expressed a desire to spend more time with mother and a preference to live with mother and have visits with father. Father continued to deny ever striking mother and stopped attending his domestic violence class because he thought that "once he regain[ed] custody, he didn't need to do [the classes] anymore," but re-enrolled at the Department's urging; by December 2021, he had attended only 17 of the 52 sessions. Because he was still in the beginning stages of that class, the Department assessed the risk to K.M. as remaining high. Thus, the juvenile court ordered the dependency jurisdiction to continue, and set a hearing for April 2022.

### D. *Fifth section 364 hearing (April 2022)*

In the three months between January 2022 and April 2022, mother improved and was scheduling regular visits with K.M., K.M. was doing well when she visited mother, and K.M. continued to express her desire to return to live with mother and

have visits with father.  Father was increasingly non-compliant with the court-ordered visitation schedule:  He "started to implement his own schedule" and took increasing control over the amount of contact between K.M. and mother, even preventing K.M. from seeing mother for "several weeks."  Father resisted the Department's requests to interview K.M. privately and "insist[ed on] knowing what questions are asked or what [K.M.] will say"; the Department noted that it had an "ongoing concern over the amount of control [father] demands when it comes to" K.M.  By mid-March 2022, over a year after father had started the series of domestic violence classes, he had completed only 36 of the 52 classes.  The court ordered that K.M. visit with mother for 29 days in May 2022 with father to have one weekend visit, in part because father "prevented" mother's past visits "from happening" and due to the parents' inability to *agree* on terms of sharing custody of K.M. over the summer.  In light of father's "failure to comply with his visitation schedule and court orders," the court continued dependency jurisdiction on April 28, 2022.  The court scheduled a further section 364 hearing for June 1, 2022.

E.    ***Sixth section 364 hearing (June 2022)***

In the two months between April 2022 and June 2022, father became increasingly uncooperative about exchanging K.M. with mother, causing the Department to reiterate its "concern" about "[f]ather's need to be in control of the situation all the time."  Father changed the time, location, and method of exchange for a planned visit "several times" and "would only accept proposals that he himself came up with."  The juvenile court observed that father was "purposefully" "trying to be very difficult" and "continually evidenc[ing]" his "controlling nature" "through his actions."  Based on father's controlling behavior, the

7

court continued dependency jurisdiction over father's objection. The court altered the removal order from home of father to home of both parents and set a visitation schedule for the summer, arranging for K.M. to live with mother during June and August and with father during July; this month-by-month schedule was partially due to father's extreme hostility to cooperating with exchanges on a weekly basis.

Father's behavior during the June 1, 2022 hearing was illustrative. After the court issued its tentative rulings in the morning session, the court recessed for lunch but ordered father to appear in the afternoon. Father did not appear. Instead, he "speed dial[ed]" the Department's "office all day asking to speak with someone about the recommendation on this case"; on those calls, he was "verbally aggressive" with the social worker. When the court was made aware of father's conduct, it noted that father was "ordered to appear" for the afternoon session because he had "constantly shown an inability to follow court orders to try to control every situation," and that father was "purposely not making himself available because he doesn't like the ruling that I've already made this morning and he's choosing to control the situation by badgering the Department."

### F. *Progress report hearing (August 2022)*

Father did not take K.M. for his scheduled visitation for the month of July because the Department would not fund a private babysitter, and father would not cooperate with the Department's recommendations to use its childcare subsidy that would pay for a local childcare program or to enroll K.M. in a county-sponsored day camp. The Department noted that "father appears to have a need to be in control of every situation, even if the recommendation or suggestion is in his best interest" and father's

"great difficulties with co-parenting" stemmed from "him wanting to be in full control of everything."

In mid-July 2022, father filed papers asking the juvenile court to "admonish[]" mother to have K.M. call father every night. K.M. told the social worker that she called father "'almost every day,'" but when father did not pick up the first time, she would sometimes forget to call again that day. Although the social worker had previously suggested several solutions, such as having father download an app to K.M.'s tablet that would let her call him directly, father had "not followed through with any" of the suggestions. When K.M. returned from one of her visits with father in a "sad and emotional" mood, she told the Department social worker that when she expressed a preference to eat at one fast food restaurant rather than another, father yelled at K.M. in front of others that K.M. "'g[ot] this disrespectful stuff'" from mother and "'you're doing all this and acting like this and they don't even love you.'" When the social worker brought up this incident with father, father became irate, yelled at the social worker, and declared that he could raise his daughter however he chose. The Department observed that father's behavior was once again escalating.

The juvenile court held a progress report hearing on August 8, 2022. Father again asked that the case be closed, blaming his increasing frustration and escalating confrontational behavior toward mother, K.M. and the social workers as being *the court's fault* for keeping the case open too long. Counsel for both mother and K.M. urged the court to continue jurisdiction because "father has tried to strong[arm] and manipulate everybody involved in this case" and the juvenile court had a good understanding of the family dynamic. The court elected to

9

continue dependency jurisdiction. The court left the summer schedule in place; K.M. was to live with mother during August, with father having weekend visits and one phone call during the week. In light of father's conduct, the court also admonished father not to yell at K.M., not to disparage mother in front of K.M., and not to interrupt K.M.'s school or pull her out of class for visits.

Once again, father's behavior during the hearing illustrated his continuing problems. Father interrupted the hearing several times, once verbally interrupting the judge and once raising his hand while mother's attorney was speaking. Later, while the court was reviewing its order and admonishing father not to "yell at or harass" K.M., either "in public or in private," father disconnected from the call.

The court set the next section 364 hearing for November 30, 2022.

## IV. Appeals

Father filed timely notices of appeal from the April and June hearings and from the August hearing. We consolidated the appeals.

## V. Events Following These Appeals[5]

Mother filed a section 388 petition in October 2022. On December 15, 2022, the juvenile court terminated dependency jurisdiction and issued an exit order granting mother full legal and physical custody over K.M., with father's visitation (once

---

[5]    We take judicial notice of these post-appeal minute orders. (Evid. Code, §§ 452, subd. (c), 459.)

approved as "appropriate" by a therapist) limited to one monitored visit per month in a therapeutic setting.[6]

## DISCUSSION

In this appeal, father raises two categories of arguments— namely, that the juvenile court erred (1) in continuing dependency jurisdiction over K.M. in April 2022 and June 2022, and (2) in making orders affecting his visitation with K.M. in April 2022, June 2022, and August 2022 without making predicate findings that would justify removal.[7]

## I. Orders Continuing Dependency Jurisdiction

Father argues that the juvenile court erred when, in April 2022 and June 2022, it denied father's requests to terminate dependency jurisdiction over K.M.

As a threshold matter, the Department urges that we need not consider father's challenge to the juvenile court's refusal to terminate dependency jurisdiction because it is moot in light of the juvenile court's subsequent termination of that jurisdiction in December 2022. A challenge becomes moot when subsequent "events "render[] it impossible for [a] court, if it should decide in favor of [the appellant], to grant him any effect[ive] relief."" (*In*

---

[6] Father has separately appealed these orders in a third appeal, which we considered simultaneously with this one. (*In re K.M.* (July 27, 2023, B325978) [nonpub. opn.] (*K.M. III*).)

[7] Father submitted his reply brief six days late, and after previously being granted two extensions and despite the last order granting an extension warning that no further extensions would be granted. We are not required to review late-filed reply briefs and could have stricken the filing (see Cal. Rules of Court, rule 8.200(a)(3) [reply brief optional]); having reviewed the brief, however, we find the arguments meritless.

11

*re D.P.* (2023) 14 Cal.5th 266, 276.) Because the December 2022 order granted the very relief that father's challenge on appeal seeks—namely, termination of dependency jurisdiction over K.M.—father's challenge is undeniably moot. We nevertheless retain "'inherent discretion'" to entertain moot challenges (*id.*, at p. 282), and we are to exercise that discretion where a jurisdictional finding could be prejudicial in future dependency cases, where such a finding "is based on particularly pernicious or stigmatizing conduct," or where the reason for mootness is a parent's "prompt compliance . . . with [his] case plan" (*id.*, at pp. 285-286). None of these conditions exist here because father is not challenging the jurisdictional findings in this appeal (and we rejected his challenges in the prior appeal); instead, he is challenging the juvenile court's post-jurisdictional, interim orders retaining jurisdiction. Father argues that (1) he was prejudiced by the juvenile court's failure to terminate jurisdiction earlier because the status quo at that earlier time was more favorable to father (and that it will be more difficult for him to obtain relief in family court now that the exit order has issued); and (2) the challenge he presents—a "[c]larification of the limited scope of juvenile dependency courts in the context of a section 364 review"—is an important and recurring issue. We reject father's arguments. The first argument boils down to the assertion that the juvenile court's orders prejudiced father because those orders enabled the court to respond to father's subsequent misbehavior; yet father was the one in control of his behavior, and *that*—not the court's jurisdiction—was the proximate cause of the subsequent, less favorable custody arrangements. The second argument rests on a valid basis for exercising discretion (namely, the existence of a recurring issue of importance) (*In re Caden C.*

12

(2021) 11 Cal.5th 614, 629, fn. 3; *In re Kieshia E.* (1993) 6 Cal.4th 68, 74, fn. 5), but this case involves no more than the application of settled law to the facts of this case. Although father provides little or no reason to exercise our discretion, we will nevertheless reach the merits for completeness's sake.

When a juvenile court exerting dependency jurisdiction has removed a child from the parent having physical custody over the child and later placed the child back in that parent's custody, section 364 dictates that the court must hold a review hearing at least every six months and, after considering the "'totality of the evidence'" regarding the status of the case at that time, "'shall terminate its jurisdiction'" unless the Department or a parent "'establishes . . . that the conditions still exist which would justify initial assumption of [dependency] jurisdiction'" or are "'likely to exist if [juvenile court] supervision is withdrawn.'"[8] (§ 364,

---

[8] It is not entirely clear whether section 364 or section 361.2 applies here. As noted in the text, section 364 applies when a child is not removed from the custody of a parent. Section 361.2, however, applies when a child is removed from one parent and placed with another parent "with whom the child was not residing at the time" of the events and conditions giving rise to jurisdiction. (§ 361.2, subds. (a) & (b)(1).) Here, the family court order in effect when the juvenile court initially exerted jurisdiction over K.M. granted mother primary physical custody but with joint legal custody to both parents; immediately after exerting jurisdiction, the court ordered K.M. removed from father and left her placed with mother, but the court subsequently removed K.M. from mother and placed her with father. If this sequence of events is deemed as a noncustodial parent later gaining custody of K.M., the applicable standard would be provided by section 361.2, which permits a juvenile court to continue to exert jurisdiction as long as "there is a need for

13

subds. (a) & (c); *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1154-1155 & fn. 9 (*Aurora P.*) [applying section 364 when a child has been removed from the custody of one parent and later returned to that parent's custody]; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 313 [same].) Section 364 thus sets up a "'default'" rule or "presumption" favoring termination of dependency jurisdiction absent proof that the conditions warranting continued exercise of that jurisdiction "still exist." (*Aurora P.*, at pp. 1156-1157; *In re D.B.* (2015) 239 Cal.App.4th 1073, 1084-1085 (*D.B.*); *In re N.O.* (2019) 31 Cal.App.5th 899, 923 (*N.O.*).) Although there is a split of authority over whether the conditions that still exist must be the same conditions that justified the initial assertion of jurisdiction (*Janee W.*, *supra*, 140 Cal.App.4th at p. 1451; *D.B.*, at p. 1085; *In re R.F.* (2021) 71 Cal.App.5th 459, 469) or may instead be any condition that "'would'" justify the exertion of jurisdiction at the time of the review hearing (*N.O.*, at p. 923; *In re J.F.* (2014) 228 Cal.App.4th 202, 209-210), we will sidestep that split by using the more parent-friendly standard and asking whether the same conditions that justified the initial assertion of jurisdiction still exist. We review a juvenile court's finding that the same conditions that justified the initial assertion of jurisdiction still exist for substantial evidence, construing the record in the light most

---

continued supervision" by the dependency court (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1451 (*Janee W.*); *In re Maya L.* (2014) 232 Cal.App.4th 81, 100-101), which in turn seems to tip more in favor of continued jurisdiction because it does not erect a presumption *against* continued jurisdiction like section 364. In light of the uncertainty, however, we will assume that section 364—and its standard that is more favorable to father—applies here.

14

favorable to that finding. (*In re N.S.* (2002) 97 Cal.App.4th 167, 172; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1525, overruled in part on other grounds as stated in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010 & fn. 7.)

Substantial evidence supports the juvenile court's finding that one of the conditions that justified the court's initial exertion of jurisdiction of K.M.—namely, father's conduct in engaging in domestic violence with mother in K.M.'s presence—still existed in April 2022 and June 2022. As the juvenile court noted at the time it exerted jurisdiction, father's outbursts of violence arose when he was unable to control a situation and lost control of his anger; this is why father's case plan required him to take anger management classes. These very same conditions still existed in April 2022 and June 2022 (and, frankly, into August 2022): Father continued to try to control K.M. as well as to control the conditions under which K.M. visited mother and himself, and father continued to get angry with—and yell at—K.M. and social workers, and to be rude and inappropriate with the juvenile court during hearings.

Father makes what boils down to four arguments in response.

First, father argues that jurisdiction in this case was based solely on his conduct in *striking* mother and K.M. (rather than his "controlling nature" or anger management issues), and that jurisdiction is no longer justified because he has not resorted to hitting anyone, including not hitting K.M. during the year she was in custody. Father construes "the conditions" that "justif[ied] initial assumption of jurisdiction" under section 364 too narrowly; the "conditions" that justified the exertion of jurisdiction over K.M. include not only the one instance when father struck

15

mother and K.M., but also his displays of domestic violence that stopped short of physical contact. Giving section 364 the reading father urges would mean that the court would be required to terminate jurisdiction even though father has continued to engage in controlling behavior, continued to yell at people, not completed the domestic violence course, and continued to deny ever committing domestic violence in the first place—in other words, even though K.M. still faces a substantial risk of serious physical harm if left in father's custody unsupervised. We decline to give section 364 such a myopic reading, as it would obligate a juvenile court to cede jurisdiction when a child is still very much at risk of harm, a result inimical to the very purpose of dependency jurisdiction. (§ 300.2, subd. (a) [purpose of dependency law is to "provide maximum safety and protection for children" and to "ensure the safety, protection, and physical and emotional well-being of children"].)

Second, father argues that his failure to complete the domestic violence courses cannot be a basis for invoking section 364's presumption "that the conditions which justified initial assumption of jurisdiction still exist" whenever a parent fails to "participate regularly in any court ordered treatment program" because the juvenile court's pronouncement of an amended case plan for father in April 2022 (that did not explicitly repeat the requirement that he attend domestic violence classes) superseded the prior case plan. We need not decide whether the later case plan nullified the prior case plan because our analysis does not rely on the presumption; there is substantial evidence that continued jurisdiction was appropriate without it.

Third, father argues that this case is more about K.M.'s custodial arrangement (as well as the Department's preference to

16

have mother and father co-parent K.M.) than anything else, and thus is really a family law case masquerading as a juvenile dependency case. We reject this argument. To begin, father made this precise argument when challenging the juvenile court's initial exercise of jurisdiction in the last appeal, and we soundly rejected it. (*K.M. I*, at pp. *9-*10.) Recycling it does not make the argument any more persuasive. More the point, father's implicit contention that child placement issues only belong in family court ignores that the placement of children when undertaken to ensure their safety is a major component of juvenile dependency; to declare that such issues render dependency supervision inappropriate is to negate the very statutes creating the juvenile dependency system and to put the juvenile dependency courts out of business. For obvious reasons, we decline father's invitation to dismantle the juvenile dependency system.

Fourth and lastly, father argues that he is being impermissibly punished for failing to "'internalize'" the Department's preferred parenting philosophy and for not being a "'perfect'" parent. For support, father cites *Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738 (*Blanca P.*) and *In re J.M.* (2020) 50 Cal.App.5th 833 (*J.M.*). *Blanca P.* holds that a juvenile court may not penalize a parent for not "'internaliz[ing]'" the "child discipline" theory taught in therapy when the parent has foresworn corporal punishment (*Blanca P.*, at p. 1751); and *J.M.* held that a court, in considering whether to modify an order, may not demand that a parent be "perfect" (*J.M.*, at p. 848). All the juvenile court did in this case was examine whether the portions of the case plan father had completed had changed his controlling and anger-prone behavior. This was entirely appropriate, and we

17

reject father's implicit assertion that a juvenile court's examination of whether a parent's *behavior* has changed is an impermissible inquiry into whether a parent has "internalized" a parenting philosophy.

## II. Visitation Orders

Father next challenges three of the juvenile court's orders—namely, (1) the court's April 28, 2022 order specifying that K.M. would visit mother for 29 days (with a weekend visit for father); (2) the court's June 1, 2022 order changing K.M.'s placement to home of *both* parents (instead of just home of father), and having K.M. stay with each parent for alternating months; and (3) the court's August 8, 2022 order specifying mother has K.M. during the weeks and father on the weekends, with father to make only one call to K.M. during the week. Father does not argue that these orders are an abuse of discretion; instead, he argues that these visitation-related orders "effectively" constitute "removal" orders that require compliance with all of the trappings of removal orders under section 361 (and section 387, for supplemental removal orders), including a finding by clear and convincing evidence that the child "would" face "a substantial danger to [their] physical health, safety, protection, or physical or emotional well-being" if returned to the parent and that there are "no reasonable means" short of removal to protect the child. (§ 361, subd. (c)(1).) This is a question of law that we review de novo. (*In re Brianna S.* (2021) 60 Cal.App.5th 303, 311.)

We reject father's procedural challenge. The implicit premise of father's challenge is that changes to visitation schedules constitute a removal of a child vis-à-vis the parent who has less visitation. Father offers no support for this notion of

18

"effective removal." We have looked for ourselves, and also find no support. (Accord, *In re D.P.* (2020) 44 Cal.App.5th 1058, 1068-1069 [child's "effective[] remov[al]" from mother due to court order requiring mother to move out of residence is not subject to removal procedures]; California Rules of Court, rule 5.502(a)(35) ["'Removal' means a court order that takes away the care, custody, and control of a dependent child or ward from the child's parent or guardian, and places the care, custody, and control of the child with the court, under the supervision of the agency responsible for the administration of child welfare or the county probation department"].) This is for good reason: Father's argument, if accepted, would require formal removal procedures for every conceivable shift in visitation. Indeed, father himself takes a one-sided view of the matter, demanding that removal procedures be followed whenever *his* visitation is reduced but not when mother's is.

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ