Filed 5/28/24  In re S.A. CA4/2

*See dissenting opinion.*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.A., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E082167 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2200491) |
| v. | OPINION |
| R.H., | |
| Defendant and Appellant; | |
| S.A., | |
| Respondent. | |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat, Judge.

Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Larisa R-McKenna, Deputy County Counsel; Gordon-Creed, Kelley, Holl, Angel and Sugerman, Jeremy Sugerman and Anne H. Nguyen for Plaintiff and Respondent.

William D. Caldwell, under appointment by the Court of Appeal, for Respondent.

**INTRODUCTION**

Defendant and appellant R.H. (Mother) appeals the juvenile court's order from a September 11, 2023, dependency hearing. Though plaintiff and respondent Riverside County Department of Public Social Services (the Department) recommended that dependency jurisdiction over Mother's daughter, respondent S.A. (Minor), be terminated, the court rejected the recommendation and instead decided to retain jurisdiction for at least six more months.

The court ordered continued jurisdiction over Minor due to concerns that she was still at risk of harm from her parents' abusive relationship dynamics. Mother argues this concern was unwarranted and the evidence showed that, by the time of the review hearing, "there was no indication . . . that [Minor] would be at any risk of harm if the juvenile court terminated its jurisdiction." Minor's father, M.A. (Father), is not a party to this appeal.

We conclude that the court's order was supported by substantial evidence from which it drew reasonable inferences. Specifically, the court reasonably inferred that Minor was at a continued, substantial risk of serious physical harm based on: the parents'

2

long history of domestic violence; their failure to complete their domestic violence courses and case plan objectives; and the fact that both parents have entered new romantic relationships with partners who themselves have histories of domestic violence.

**FACTUAL AND PROCEDURAL HISTORY**

Minor (born April 2014) came to the attention of the Department after law enforcement responded to an incident of domestic violence between her parents. According to the Department, on June 27, 2022, Father was arguing with Mother when Father " 'blacked out and went into a rage.' " He shoved Mother and repeatedly punched her in the face. Minor was in the living room while this dispute was occurring in a bedroom. The parents have insisted, and the Department has reported, that Minor did not see any physical fighting. However, Minor has stated that she entered the bedroom after hearing Mother crying and saw Father punch Mother. Minor then called her maternal aunt for help. This led to law enforcement's arrival at the home and Father's eventual arrest for domestic violence.

The next day, the Department's social worker interviewed Mother and Minor at the family home. Mother confirmed the facts of the prior day's incident. She also confirmed that Father had been diagnosed with bipolar disorder, but was not taking medication for it. At the time of this interview, Mother made it clear to the social worker that she wanted Father to return to the family home upon his release from custody because she could not afford the apartment without him.

On June 29, 2022[1], the Department made the decision to place Minor in protective custody. The following day, the Department retrieved Minor from Mother's care and placed her in a foster home. At the detention hearing, the juvenile court ordered Minor detained from the parents.

On July 13, 2022, Father pled guilty to felony domestic violence. He was sentenced to 90 days of custody, three years of formal probation, and a 52-week domestic violence program. The sentencing court also issued a three-year criminal protective order that is set to expire on July 25, 2025. Around this time, Mother decided to end her relationship with Father. As such, Mother told the property manager at her apartment complex about the restraining order against Father and changed the locks to the residence.

On August 16, 2022, the juvenile court held a contested jurisdictional and dispositional hearing. In its report, the Department recommended that Minor be returned to Mother and both parents receive services. The court sustained all four of the first amended petition's allegations; and, in accordance with the Department's recommendations, declared Minor a dependent while granting placement with and physical custody to Mother, visitation for Father, and services for both parents.

---

[1] The detention report states that this decision was made on May 29, 2022, and that the Department retrieved Minor from Mother on May 30, 2022. Based on the probable cause statement, the order of events, and the parties' briefs, we believe these were clerical errors and that the actual dates were June 29, 2022, and June 30, 2022, respectively.

4

Over the next 11 months, Mother took Minor to her primary care physician for a wellness examination and to therapy appointments, attended her own therapy appointments, completed a parenting education course, and consistently tested negative for drugs to the extent that the court relieved her of the order to complete further drug-testing. However, she did not complete her domestic violence classes. Furthermore, she began a new dating relationship with a man who has twice been convicted of domestic violence for conduct that occurred as recently as 2018 and 2019.

Meanwhile, after his July 2022 conviction, Father moved out of the family home. He underwent a psychiatric assessment; and while the psychiatrist concluded that Father "did not endorse any significant psychiatric symptoms requiring treatment with psychiatric medication," this conclusion was based solely on information provided by Father. He completed a parenting class; was reportedly making progress in but had yet to complete his domestic violence classes; and was abiding by the restraining order. However, like Mother, he too entered a new dating relationship with a partner who had a history of domestic violence.

Additionally, the Department's investigation revealed that the family had been referred to the Department twice before, in 2015 and 2021. The 2021 referral was based on Minor's excessive absences from school and was ultimately deemed unfounded. But the 2015 referral had been based on a prior domestic violence event that occurred in Minor's presence: Father, Mother, and one-year-old Minor were in a car when Father and Mother began arguing and exited the vehicle. Mother took Father's cell phone and threw it on the ground. Father pulled Mother's hair, shoved Mother against the car, and

attempted to remove Minor from the car so he could leave with her.  Father was arrested, convicted of misdemeanor domestic violence, diagnosed with bipolar disorder, and ordered to complete a 52-week domestic violence program; but the Department ultimately decided that the allegations of neglect were inconclusive and only recommended voluntary services.  Both parents also admitted to a history of domestic violence preceding Minor's birth; and Mother estimated 15 prior incidents of unreported domestic violence wherein Father punched her, choked her, and held a pillow over her face.

On July 20, 2023, the Department filed a report ahead of the 12-month review hearing, in which it recommended the court terminate dependency, grant full physical custody to Mother, grant joint legal custody to Mother and Father, and grant visitation to Father.  The appellate record does not contain a copy of the challenged order, but the transcript of the proceedings indicates that the juvenile court disagreed with the recommendation.  After reading the report and addendum reports, the court was concerned that the Department had "not confirmed [Mother's] completion of services" and that Father's psychiatric assessment concluding that he did not need medication was based on Father's inaccurate self-reporting.  The court set a contested review hearing and ordered the Department to return with updated information on the parents' services.

At the September 11, 2023, contested review hearing, Mother confirmed that she had completed only eight out of 16 domestic violence classes.  Furthermore, while counsel for Minor initially submitted on the Department's recommendation to terminate jurisdiction, by the time of the contested review hearing, counsel opposed it.  The court

6

found that Mother had not substantially complied with the case plan because she completed only half of the domestic violence course and was no longer receiving psychotherapy.  It found that Father also completed only half of his domestic violence course and, rather than taking accountability for his conduct, was still representing that Mother was the aggressor.  Lastly, the court observed that both parents had entered new dating relationships with partners who each had their own history of domestic violence.  It therefore rejected the Department's recommendation and decided to retain jurisdiction.

On September 15, 2023, Mother timely appealed the juvenile court's order, which is an appealable order under Welfare and Institutions Code[2] section 395.  In its responsive brief, the Department aligned with Mother and reiterated its recommendation to terminate dependency jurisdiction.

Since the Department supported her position, Mother declined to file a reply brief.  However, given that Minor ultimately argued to the juvenile court for continued jurisdiction, we invited Minor to file her own responsive brief.  Minor did so, reiterating her support for continued jurisdiction; and also filing a request for judicial notice of a January 22, 2024, minute order.

Mother filed a reply to Minor's responsive brief and opposed the request for judicial notice.

---

[2]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

7

**DISCUSSION**

## A.  MINOR'S REQUEST FOR JUDICIAL NOTICE

A reviewing court may take judicial notice of any matter identified in Evidence Code section 452.  (Evid. Code, § 459, subd. (a).)  Section 452 includes the records of any court of this state.  (Evid. Code, § 452, subd. (d).)  However, a judicially noticed matter must always be relevant to a material issue.  (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422.)  As Mother argues in her opposition to the request for judicial notice, our Supreme Court has observed that "an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration."  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, quoting *In re James V.* (1979) 90 Cal.App.3d 300, 304.)  Therefore, facts that arise after an order was issued are typically irrelevant to a review of that order's propriety.

Minor cites *In re Karen G.* (2004) 121 Cal.App.4th 1384 as an example of an appellate court taking judicial notice of juvenile court proceedings that occurred after an appeal was filed.  In that case, Division Three judicially noticed the subsequent juvenile court proceedings in order to conclude the appeal was moot.  (*Id.* at p. 1390.)  Indeed, a reviewing court must consider " ' "whether subsequent events in a juvenile dependency matter make a case moot." ' "  (*In re D.P.* (2023) 14 Cal.5th 266, 276.)  In that scenario, a subsequent action by the juvenile court could be relevant to the issue of mootness.

Here, Minor has asked us to judicially notice the juvenile court's January 22, 2024, minute order.  According to this minute order, the court continued its retention of jurisdiction over Minor.  But this decision was made after the events of this appeal.  We

8

directed the parties to file supplemental briefing on whether the decision rendered Mother's appeal moot. Mother, the Department, and Minor agreed it did not.

Since Minor contends the appeal is not moot, we surmise that Minor presents this minute order in support of her argument on the merits. Indeed, Minor states in her request for judicial notice that the minute order "supports affirming the lower court's order continuing jurisdiction in this appeal." Under the general rules of appellate review, a subsequent court order is not relevant to the correctness of an earlier order; Minor has not provided a satisfactory reason to find otherwise here. As the January 22, 2024, minute order is not relevant to the appeal, Minor's request for judicial notice is denied.

B.    STANDARD OF REVIEW

The juvenile court adjudged Minor a dependent of the court based on the Department's amended petition, which alleged in relevant part[3] that the parents failed to protect Minor from an actual or a substantial risk of serious physical harm under section 300, subdivision (b)(1).

When a minor is adjudged a dependent of the court but has not been removed from the physical custody of her parent—or, as is the case here, she has been removed from but later returned to the physical custody of her parent—the court must hold a review hearing a least once every six months until it terminates jurisdiction. (§ 364, subd. (a); *In*

---

[3] The original petition alleged an additional basis for jurisdiction, under section 300, subdivision (g), which pertains to minors whose parents are incarcerated or institutionalized. As of the review hearing in question, Father was not in custody and the allegation no longer applied. The allegation was therefore stricken from the amended petition.

*re D.B.* (2015) 239 Cal.App.4th 1073, 1078, fn. 2.) At this review hearing, the court may hear evidence from the social worker, parent, or child. (§ 364, subd. (c).) Based on this evidence, the court "shall determine whether continued supervision is necessary" and "shall" terminate jurisdiction "unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c).) The provision's use of the word "shall" creates a statutory presumption in favor of terminating jurisdiction. (*In re Armando L.* (2016) 1 Cal.App.5th 606, 615.)

"The language of section 364 does not literally require that the precise conditions for assuming jurisdiction under section 300 in the first place must still exist—rather that conditions exist that '*would* justify initial assumption of jurisdiction.' " (*In re J.F.* (2014) 228 Cal.App.4th 202, 210 (*J.F.*), italics original, quoting § 364, subd. (c).) The court looks at "the totality of the evidence before it, including reports of the social worker who is required to make a recommendation concerning the necessity of continued supervision." (*In re N.O.* (2019) 31 Cal.App.5th 899, 922-923.)

However, the court need not abide by the social worker or department's recommendation: "the juvenile court may retain jurisdiction notwithstanding the recommendation of, or facts solely submitted by, the Department if there is a preponderance of evidence that the conditions are such to justify that retention." (*J.F.*, *supra*, 228 Cal.App.4th at p. 210.)

A juvenile court's order terminating jurisdiction is reviewed for abuse of discretion (*In re Maya L.* (2014) 232 Cal.App.4th 81, 102); and under an abuse of discretion standard, the court's factual findings must be supported by substantial evidence (*In re A.J.* (2013) 214 Cal.App.4th 525, 535, fn. 7). When determining whether a finding was supported by substantial evidence, "all conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible. Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact." (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547, superseded by statute on other grounds.) "[T]he appellate court does not reweigh the evidence, evaluate the credibility of witnesses, or draw inferences contrary to the findings of the trial court." (*J.F.*, *supra*, 228 Cal.App.4th at p. 209.)

C. <u>SUBSTANTIAL EVIDENCE OF A CONTINUED RISK FROM POTENTIAL DOMESTIC VIOLENCE</u>

Here, the Department's amended petition alleged that Minor suffered or is at substantial risk of suffering serious physical harm because Mother and Father "engage in ongoing acts of domestic violence while in the presence of the child"; Mother "minimize[s] the impact of domestic violence to the child, failed to obtain a restraining order, and . . . continued to engage in an abusive relationship with the father"; Father "suffers from unresolved mental health issues [including] a diagnosis of Bipolar Disorder, depression, [and] suicidal ideations, and he has failed to maintain the appropriate medical

11

treatment for his mental health issues"; and Father "has a criminal history [including] arrests and/or convictions for burglary and abuse/[child endangerment]."

When the juvenile court made its initial jurisdictional finding, it sustained the amended petition and ordered family maintenance services for Mother and reunification services for Father, in accordance with the Department's case plan. This case plan required both parents to "participate [in] and complete a domestic violence education class" and "identify three learned skills" to implement in their relationships. The parties agree that, at the time of the review hearing, neither parent had completed their case plan: Mother was discharged from her domestic violence course for excessive absences and Father had completed 28 classes of his 52-week program. Under section 364[4], the incomplete domestic violence coursework constituted prima facie evidence of the continued existence of the conditions that justified the initial assumption of jurisdiction: the substantial risk of serious physical harm to Minor created by her parents' domestic violence dynamics.

Mother points to the following evidence to rebut this statutory presumption and show that Minor was no longer at risk: the social worker testified that jurisdiction was unnecessary because Mother had benefitted from the services she did complete; Mother also testified that she benefited from her partial completion of services; the Department recommended that jurisdiction be terminated; and Mother has had physical custody of

_____

[4] "Failure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary." (§ 364, subd. (c).)

Minor for over a year without incident. Indeed, the evidence showed that Father has abided by the restraining order and Mother attested to learning about "boundaries" and "signs and warnings" from the eight domestic violence classes she did attend. Mother and the social worker also testified that Mother tried to reenroll in the domestic violence course, and it was the service provider who did not respond to multiple contact attempts; and that, at the time of the review hearing, Mother had begun the reenrollment process. The social worker testified that she believed Mother could complete the domestic violence program without supervision.

The juvenile court could have reasonably concluded that this evidence refuted the presumption that Minor was still at risk from her parents' domestic violence. But it could just as reasonably have decided that these representations carried little weight. The parties do not dispute that Minor is at substantial risk of serious physical harm when her parents fight. The 2015 altercation, during which Father attempted to pull a one-year-old Minor from the car while simultaneously assaulting Mother, could have led to severe injuries. Minor was so terrified during the 2022 argument that she called her aunt for help; and though Father was not violent towards Minor, he also admitted that he had " 'blacked out and went into a rage,' " suggesting Father did not have control over his actions in that moment and could easily have injured Minor.

Mother essentially argues that there is no evidence of a risk of future domestic violence. She and the social worker testified in a vague and conclusory manner that Mother had sufficiently learned to avoid abusive dynamics in her relationships by completing just half of a domestic violence course, despite having dated Father for nine

13

years before ending the relationship in July 2022. Besides the 2015 and 2022 assaults, she admitted to "approximately 15 prior incidents" of domestic violence between herself and Father, all unreported and some predating Minor's birth. Then, as of February 11, 2023—barely six months after exiting this long-term abusive relationship—Mother began a new relationship with a man who, like Father, was convicted of physically abusing his previous partner and was the restrained party under a criminal protective order. Based on this history, the juvenile court could reasonably infer that Mother's new relationship with a man who had abused his previous partner is not merely a coincidence but perhaps demonstrative of a subconscious inclination to engage in unhealthy relationships. This is not a personal failing on Mother's part, but reasonably warrants the court's finding that Minor is still at risk: Mother and her new boyfriend may not have had physical altercations by the time of the review hearing, but by that point, they had been dating for only half a year; many abusive relationships are still in their "honeymoon" phase at the beginning of a relationship and do not become abusive until more time has passed. Thus, the court was understandably skeptical of Mother's and the social worker's representations about the risk of domestic violence, even if that risk is no longer *between* Mother and Father.

There was additional affirmative evidence that the risk of domestic violence had not abated: Father, too, had begun a relationship with a woman who had been a victim of domestic violence. For the same reasons applied to Mother, the court reasonably inferred that this new relationship with a victim of domestic violence was not coincidental. Furthermore, Father was living with his new girlfriend, and Minor's visits were taking

14

place at the girlfriend's home, such that Minor could be present during potential altercations. Father was not treating his bipolar disorder, despite the Department having attributed both the 2015 and 2022 incidents of domestic violence to his "untreated mental health issues." Though a psychiatrist stated that Father did not need medication, the court was explicitly concerned that this was based solely on Father's false representations to the psychiatrist about Mother being the aggressor during the 2022 argument—a statement that is entirely contrary to Father's own admissions. None of the parties addressed these concerns for the juvenile court.

Looking at the totality of the evidence, we find the juvenile court could reasonably conclude from the fact that neither parent had completed their domestic violence courses that conditions to justify jurisdiction still existed. During their nine-year relationship, Minor's parents had multiple incidents of domestic violence, two of which resulted in Father's 2015 and 2022 criminal convictions. Father had been ordered by the criminal court to complete a domestic violence course in 2015, but this apparently was not effective in preventing the 2022 altercation. Both parents are now in new relationships that appear to have similar dynamics to their previous abusive relationship.

The court seems to have found Mother's evidence uncompelling; this was not unreasonable. Her testimony about what she learned from her incomplete domestic violence course was vague. She claims she did not finish her course because she was busy with work, but there is no explanation for why work is no longer an obstacle. Father has abided by the restraining order, and he and Mother have not had further

15

altercations with each other, but there is now a risk of domestic violence with their new partners.

Giving deference to the juvenile court's reasonable inferences and its weighing of the evidence, the evidence is sufficient to conclude that the risk of at least one of the parents engaging in a violent altercation in front of Minor has not abated, such that continued jurisdiction was warranted.

## DISPOSITION

The juvenile court's order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

I concur:

FIELDS
J.

16

[*In re S.A.*, E082167}]

MENETREZ, J., Dissenting:

I agree with the majority opinion that if we reach the merits of this appeal, then we should affirm. But I believe that the appeal is moot, so we should dismiss without reaching the merits.

R.H. appeals from the juvenile court's findings and orders at a family maintenance review hearing under Welfare and Institutions Code section 364 (§ 364), and she argues that the court should have terminated jurisdiction at that hearing. Were we to agree with her that the record does not contain sufficient evidence to support the court's finding that conditions justifying dependency jurisdiction still exist or are likely to exist if supervision is withdrawn, we would not reverse with directions to terminate jurisdiction. Rather, we would reverse with directions to conduct another review hearing under section 364 on the basis of current conditions and updated evidence. The reason is that circumstances may have materially changed since the review hearing from which the appeal was taken—for example, perhaps there have been subsequent domestic violence incidents, or perhaps other child safety issues have arisen.

Because we would not reverse with directions to close the case, the only relief that R.H. could obtain on this appeal would be another section 364 hearing based on updated evidence. But she has already obtained that relief: The minute order that is the subject of the request for judicial notice shows that a subsequent section 364 hearing has already taken place, and the court again found, on the basis of updated evidence, that it was not appropriate to close the case.

1

Because R.H. has already received all of the relief that we could give her, the appeal is moot and should be dismissed.  I therefore respectfully dissent.

MENETREZ
J.